UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DR. CHAD COFFMAN | ) | CASE NO. |
| 3529 Delmar Drive | ) | |
| Rocky River, Ohio 44116 | ) | JUDGE |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| PARMA CITY SCHOOL DISTRICT | ) | **(With Jury Demand)** |
| BOARD OF EDUCATION | ) | |
| c/o Its Board President Kathleen Petro | ) | |
| 5311 Longwood Avenue | ) | |
| Parma, Ohio 44134 | ) | |
| | ) | |
| CARL H. HILLING, Individually and as | ) | |
| Superintendent of the Board | ) | |
| 4422 Ridgewood Drive | ) | |
| Parma, Ohio 44134 | ) | |
| | ) | |
| CASSANDRA JOHNSON, Individually and as | ) | |
| Human Resource Director for the Board | ) | |
| 5308 Yosemite Drive | ) | |
| Medina, Ohio 44256 | ) | |
| | ) | |
| KATHLEEN A. PETRO, Individually and as | ) | |
| President of the Board | ) | |
| 1181 E. Sprague Road | ) | |
| Seven Hills, Ohio 44131 | ) | |
| | ) | |
| LYNN HALLORAN, Individually and as | ) | |
| Vice President of the Board | ) | |
| 9462 Ackley Road | ) | |
| Parma Heights, Ohio 44130 | ) | |
| | ) | |
| KAREN S. DENDORFER, Individually and as | ) | |
| Member of the Board | ) | |
| 7238 Greenleaf Avenue | ) | |
| Parma, Ohio 44130 | ) | |
| | ) | |
| ROSEMARY C. GULICK, Individually and as | ) | |
| Member of the Board | ) | |
| 5585 Chatham Drive | ) | |
| Seven Hills, Ohio 44131 | ) | |

JOHN TENEROWICZ, Individually and as    )
Member of the Board                     )
7515 Stary Drive                        )
Parma, Ohio 44134                       )
                                        )
            Defendants                  )

Plaintiff alleges the following for his Complaint against the Defendants:

## STATEMENT OF THE PARTIES AND INDIVIDUALS

1.  Plaintiff Dr. Chad Coffman ("Coffman") resides at 3529 Delmar Drive, Rocky River, Ohio 44116, and at all relevant times was the Principal at Parma Senior High School.

2.  The Parma City School District Board of Education ("Board") is the governing body of the Parma City School District ("District") and a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 5311 Longwood Avenue, Parma, Ohio 44134.

3.  Coffman is a 49-year-old white male who is currently employed by the Board under a 3-year administrative contract as the Principal of Parma Senior High School ("Parma HS") pursuant to Ohio Revised Code ("O.R.C.") 3319.02.

4.  Parma HS is a school located in the District and governed by the Board.

5.  Defendant Carl H. Hilling ("Superintendent Hilling") is a male who was, at all times relevant, the Superintendent of the District.  Superintendent Hilling is named in his official and individual capacities.  Superintendent Hilling resides at 4422 Ridgewood Drive, Parma, Ohio 44134.

6.  Defendant Cassandra Johnson ("Director Johnson") is a black female who was, at all relevant times, the Human Resource Director for the Board.  Director Johnson is named in her official and individual capacities.  Director Johnson resides at 5308 Yosemite Drive, Medina, Ohio 44256.

7.    Defendant Kathleen A. Petro ("President Petro") is a female who was, at all relevant times, the President of the Board.  President Petro is named in her official and individual capacities.  President Petro resides at 1181 E. Sprague Road, Seven Hils, Ohio 44131.

8.    Defendant Lynn Halloran ("Vice President Halloran") is a female who was, at all relevant times, the Vice President of the Board.  Vice President Halloran is named in her official and individual capacities.  Vice President Halloran resides at 9462 Ackley Road, Parma Heights, Ohio 44130.

9.    Defendant Karen S. Dendorfer ("Board Member Dendorfer" or "Dendorfer") is a female who was, at all relevant times, a member of the Board.  Dendorfer is named in her official and individual capacities.  Dendorfer resides at 7238 Greenleaf Avenue, Parma, Ohio 44130.

10.   Defendant Rosemary C. Gulick ("Board Member Gulick" or "Gulick") is a female who was, at all relevant times, a member of the Board.  Gulick is named in her official and individual capacities.  Gulick resides at 5585 Chatham Drive, Seven Hills, Ohio 44131.

11.   Defendant John Tenerowicz ("Board Member Tenerowicz" or "Tenerowicz") is a male who was, at all relevant time, a member of the Board.  Tenerowicz is named in his official and individual capacities.  Tenerowicz resides at 7515 Stary Drive, Parma, Ohio 44134.

12.   The Board, Superintendent Hilling, President Petro, Vice President Halloran, Board Member Dendorfer, Board Member Gulick, and Board Member Tenerowicz, are collectively referred to herein as "Defendants."

13.   Mr. Matthew LaHue ("Assistant Principal LaHue"), at all relevant times, was the Assistant Principal at Parma HS.

14.   Ms. Yolanda Rodriguez Pettigrew ("Assistant Principal Pettigrew"), at all relevant times, was an Assistant Principal at Parma HS.

15.   Mr. Ted Bickley ("Deputy Principal Bickley"), at all relevant times, was a Deputy Principal at Parma HS.

16.   Mr. Richard Vanik, at all relevant times, was the Director of Security at Parma HS.

17.   Ms. Kelly Cooper, at all relevant times, was Superintendent Hilling's secretary.

18.   Mr. Matthew Markling ("Attorney Markling") is an attorney that has been assigned by the Ohio Association of Secondary School Administrators ("OASSA") to represent Coffman.

### STATEMENT OF JURISDICTION

19.   Coffman incorporates all of the above paragraphs as if fully rewritten herein.

20.   Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 as one or more of the claims arise "under the Constitution, laws, or treaties of the United States."

21.   Supplemental jurisdiction is invoked pursuant to 28 U.S.C. §§ 1367 as the state law claims or as so related to the claims within which this Honorable Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."

22.   Venue is conferred under 28 U.S.C. §§ 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio.

23.   The Board may be served with summons and process under O.R.C. 3313.34 by leaving a copy with Board President Petro and is subject to the jurisdiction and venue of this Court.

### STATEMENT OF FACTS

24.   Coffman incorporates all of the above paragraphs as if fully rewritten herein.

25.   The Board entered into a two (2) year certified administrative contract of employment for Coffman to be a high school principal from August 1, 2011, through July 31, 2013.

26. After successfully performing his duties, the Board and Coffman entered into a second two (2) year administrative contract of employment from August 1, 2013, through July 31, 2015, for him to continue as the Parma HS Principal.

27. After Coffman's second successful employment term, the Board entered into a three-year administrative contract of employment with him to be a high school principal for a three (3) year term from August 1, 2015, through July 31, 2018.

28. Also on August 1, 2015, the Board approved Coffman as the Interim Superintendent of the District for a short period of time.

29. On or about August 2015, the Board hired Mr. Hilling as a one-year Interim Superintendent.

30. On January 14, 2016, the Board removed the interim designation and made Mr. Hilling the Superintendent of the District.

31. Since his employment with the Board, Superintendent Hilling has been motivated by a desire to remove all of the employees hired by the former superintendent Jeff Graham without regard to their legal or contractual rights.

32. Superintendent Hilling has openly stated to District staff that "I need to remove Graham's hires."

33. The Board and the District recognized Coffman's qualifications and administrative abilities by repeatedly renewing his employment agreement as a high school principal and furthermore allowing him to be an interim superintendent for the District in 2015.

34. When Coffman was originally hired to be the Parma HS Principal in August 2011, he replaced Director Johnson, who had been under contract with the Board for that position.

35. In 2011, Director Johnson took the position as Human Resource Director for the Board, which paid less than her prior position as Parma HS Principal.

36.    Director Johnson has demonstrated personal animosity towards Coffman during his five (5) year tenure as an employee of the Board and Principal of Parma HS for the District.

37.    Director Johnson's personal animosity includes threats and retaliatory actions towards Coffman and his employment while the Parma HS Principal.

**<u>Student Fight at Parma HS</u>**

38.    On Wednesday, August 26, 2015, a grandmother for a female black high school student contacted Assistant Principal LaHue by telephone to complain that her granddaughter was being bullied in the lunch room by other Parma HS students.

39.    Later that same day, Assistant Principal LaHue spoke with the black female student and she told him that mean things were being said to her by two white female students, but she did not know their names and did not want people at Parma HS to think she was telling on them.

40.    Assistant Principal LaHue could not determine, from looking at video of the lunch room that day, who the two white female students were that were allegedly bothering the black female student.

41.    On Friday, August 28, 2015, the grandmother and the black female student met with Assistant Principal LaHue and stated that she was still being harassed and now she knew the names of the two white female students.

42.    Assistant Principal LaHue called both white female students, who were saying mean things to the black female student, into his office to mediate with Guidance Counselor Riaz Moinuddin and explain that if there was any more contact, there would be serious consequences.

43.     The two white female students stated that there were just words exchanged, but they also stated that a black adult female had made contact with them after school on Thursday, August 27, 2015, and said they should back off and leave the black female student alone.

44.     After the school day was over on Friday, August 28, 2016, Assistant Principal LaHue received a call saying that the two white female students had been assaulted by the black female student, her mother, and another family member.  The assault was so severe that the students needed to be taken to the hospital after school on Friday, August 28, 2015, for their injuries.

45.     Assistant Principal LaHue called Coffman on his cell phone and apprised him of the situation that occurred after school on Friday, August 28, 2015.

46.     Coffman suggested that Assistant Principal LaHue contact Rick Vanik, the Director of Security, and Dale Hillman, the Assistant Director of Security, to let them know of the situation because it was after school hours.

47.     Assistant Principal LaHue sent an email to both individuals explaining the after-school incident with all the information he had at that time.

48.     Assistant Principal LaHue was not at school on August 31, 2015, and September 1, 2015, due to an illness and he did not participate in the investigation and discipline of the three high school students.

49.     On Monday, August 31, 2015, Coffman was made aware of two written statements by the two white female students stating that they had been jumped by the black female student and two adults and needed to be taken to the hospital after school on Friday, August 28, 2015, for their injuries.

50. Coffman met with Redmen II and asked for information from the incident.  Redmen II is an off-duty Parma police officer assigned to the District and Parma HS.  Redmen II stated that an assault took place and that he would give Coffman the police report later that day.

51. On Monday, August 31, 2015, Coffman was called by Assistant Principal Pettigrew to her office because the black female student, her mother, and grandmother were present.

52. At that meeting, the black female student, her mother, and grandmother admitted that the assault occurred and that they instigated it because Coffman was told the two white female students had continued to pick on the black female student, even after the mediation took place on Friday, August 28, 2015, with Assistant Principal LaHue and Guidance Counselor Riaz Moinuddin.

53. Coffman asked the mother and grandmother to take the black female student home for the day so he could obtain and review the police report before making any decisions on the handling of the matter and the consequences of the after-school fight.

54. The mother and grandmother of the black female student asked why she had to go home and the two white female students were permitted to stay at Parma HS that day.

55. Coffman told them that all the information he had so far, and the information they shared at the meeting, indicated that the black female student was the aggressor, so she would need to go home for the day.

56. Coffman scheduled a 9:30 a.m. meeting for them to return to Parma HS on Tuesday, September 1, 2015.

57. The grandmother of the black female student stated she was going to see the Superintendent, so Coffman called Superintendent Hilling and shared the information he had gathered so far with him on the phone.

58.   The grandmother went to the Board office and waited to speak with Superintendent Hilling on August 31, 2015.  After she grew tired of waiting, she left the building and Superintendent Hilling never contacted her.

59.   Later on August 31, 2015, Coffman received the police report, which was around the middle of the day.  The Parma Police report stated that the two white females were assaulted.  The police report also contained witness statements from adults and students at the high school stating that the two white females were assaulted and that the black female student's mother stated in the police report that she condoned the fight.

60.   Because Assistant Principal LaHue was out sick on August 31, 2015, and September 1, 2015, Coffman met with Assistant Principal Pettigrew to explain the information known from the police report and white female students' written statements regarding what had taken place on Friday, August 28, 2015.  Coffman instructed Assistant Principal Pettigrew to hold three suspension hearings for the three girls.  Two of the hearings were for bullying and insubordination, which would be a three-day suspension, and one was for assault, which is a ten-day suspension under the District and Board policies and procedures.  As in all suspension hearings, if new evidence is discovered, the number of days can and should be modified by the administrator holding the hearings.

61.   On September 1, 2015, Assistant Principal Pettigrew conducted the three hearings without incident from any of the students or their families.

62.   Coffman then emailed Assistant Principal LaHue, Security Director Vanik, Assistant Security Director Hillman, and Superintendent Hilling reporting that the two white students who were bullying were suspended for three days each and the one black student who did the assult was suspended for ten days.

63.   Superintendent Hilling responded, "Thanks for the follow-up! [. . .] I hope the judge does something more than just give them a verbal warning especially due to the one girl's medical condition!  Enjoy your day!" (Emphasis in original email).

64.   None of the students appealed the disciplinary hearings and the suspensions issued by Assistant Principal Pettigrew became final.

65.   On October 20, 2015, one of the white female students, who was suspended for three days, came into the office and spoke with Assistant Principal Pettigrew.  The white female student told Assistant Principal Pettigrew that a number of her friends were posting things on social media about the fight and making fun of her for getting jumped and getting "her ass beat."

66.   The white female student also said that someone had posted a video of the fight and that it was still on the Internet.  The white female student then forwarded a copy of the video to Assistant Principal Pettigrew, but said she did not know who posted it.

### Civil Rights Complaint

67.   On January 5, 2016, Rick Vanik, Director of Security, brought a copy of a request from the United States Department of Education for Ohio Civil Rights Region XV regarding information concerning the suspension of the three girls on September 1, 2015.  The request was dated as being received by the District on December 16, 2015, but this was the first time Coffman was made aware of it.

68.   On that same day, Coffman brought the complaint to Assistant Principals LaHue and Pettigrew and stated that all three of them needed to begin gathering the information as requested by the U.S. Department of Education.

69.   At that time, Assistant Principal Pettigrew showed Coffman the video on her computer of the fight, which he had not known about nor seen before that day.

70.    On January 6, 2016, at 7:19 a.m., Coffman received a text from Director Johnson telling him to check his email.  Coffman immediately complied and discovered that Director Johnson had sent him an email, after school hours the day before, requesting information regarding the fight.

71.    Coffman gathered the requested information that he had for himself and the Assistant Principals and took it all to Director Johnson's office at 9:00 a.m., but she was not in yet. Coffman gave the information and documents to Director Johnson's secretary and asked that everything be given to Director Johnson as soon as she arrived.

72.    At approximately 9:25 a.m. on January 6, 2016, Coffman received a call over the radio to come to the Assistant Principal's office.  Coffman went and Director Johnson was there, as well as Assistant Principals LaHue and Pettigrew.  Director Johnson was critical of the documentation that the three (3) of them had provided to her office.  Director Johnson was also critical of suspending students for a fight that occurred off school property and stated that the District does not have a policy that gives it authority to punish students for incidents not on school property.

73.    Deputy Principal Bickley brought witness statements from the two (2) assaulted girls to Director Johnson.  Assistant Principal Pettigrew showed Director Johnson the video she had of the fight from the Internet.

74.    Later that same day, Coffman emailed Director Johnson the District's student policy, which is printed in the Student Handbook, explaining that the Board and District have the authority to suspend students for incidents occurring off school property.

75.    On January 8, 2016, as requested by Director Johnson, Coffman provided a timeline of events from Assistant Principals LaHue and Pettigrew, Deputy Principal Bickley, and

himself regarding their individual involvement in the investigation and suspension of all three students.

76. On January 12, 2016, Director Johnson placed Coffman on paid administrative leave beginning January 13, 2016.

77. Director Johnson's January 12, 2016, Administrative Leave of Absence letter stated that an investigation was being performed as to whether Coffman fulfilled his "obligation to thoroughly and appropriately document, and investigate concerns in connection with the recent United States Department of Education for Civil Rights Region XV investigation." Director Johnson's letter also stated that while Coffman was on an administrative leave, he is "not to be on school property or have any form of communication or contact with any Parma City School District student(s), parents or staff member without express permission from this office." Further, Coffman was "restricted from using or having access to any District technology other than to communicate with his District supervisor or the Director of Human Resources. During your administrative leave, you are reassigned to your home and are to be available for any necessary communication during your regularly scheduled work hours." Director Johnson further threatened that "failure to abide by these directives will be considered insubordination and could lead to further disciplinary action including termination" of Coffman.

78. On January 13, 2016, Superintendent Hilling, in response to Coffman's email stating his intention to return to his position as Parma HS Principal as soon as possible, emailed all Board Members with an email message inaccurately stating that Coffman acknowledged not fulfilling his responsibilities.

79.  On January 21, 2016, Coffman received an email from Director Johnson directing him to attend an investigative meeting on January 22, 2016, at 3:00 p.m. with her and Superintendent Hilling.

80.  Director Johnson's email identified the issue as being Coffman's fulfillment of his alleged obligation to document and investigate concerns regarding the Civil Rights Region XV investigation.

81.  On January 22, 2016, Coffman attended the investigative meeting in the Superintendent's office with Superintendent Hilling, Director Johnson, and Kelly Cooper, the Superintendent's secretary.

82.  Throughout the "investigation meeting" Director Johnson and Superintendent Hilling accused Coffman of various baseless infractions and attempted to get Coffman to admit wrongdoing under thinly veiled threats of termination.

83.  On January 23, 2016, Director Johnson and Superintendent Hilling terminated Coffman's school email access.

84.  On January 26, 2016, Coffman received a letter from Director Johnson regarding a disciplinary hearing scheduled for January 29, 2016.

85.  Coffman contacted the Ohio Association of Secondary School Administrators ("OASSA") and he was advised that OASSA would provide a defense through Attorney Markling, but the hearing needed to be rescheduled because of the attorney's unavailability on such short notice.

86.  In February 2016, Coffman's name was removed from all District school documents and an interim high school principal was appointed effective February 1, 2016.

13

87.  On February 9, 2016, at 7:15 p.m., an automated voice mail message was sent to every family of Parma HS from Stacey Stuhldreher, the new Interim Parma HS Principal.  In the message, she stated she was acting Principal while Coffman was on leave.

**Public Records Request and Failure to Act**

88.  Attorney Markling, Coffman's legal representative from OASSA, sent repeated public records requests to obtain information and documents from the Board.

89.  The Board refused to provide many documents and has been slow in providing other relevant documents.

90.  The Defendants also have failed to provide any information regarding the status of the investigation or the steps they have taken to perform the investigation.

91.  The Defendants also failed to schedule a meeting to try to resolve Coffman's administrative leave for failing to *allegedly* complete paper work, which has been pending for over eight (8)  months.

92.  Director Johnson's January 12, 2016, Administrative Leave of Absence letter only identified Coffman's *alleged* failure to properly complete certain documentation and/or an investigation, which is not accurate nor substantial enough to keep him on administrative leave at home for over eight (8) months.

93.  The Board's ByLaws & Policies state that "discipline of a staff member ... shall be in proportion to the employee's offense or misconduct, consistent with appropriate procedural and substantive due process ... ."

94.  The other administrators involved in the investigation (Assistant Principals LaHue and Pettigrew and Deputy Principal Bickley) and the administrator who actually conducted the suspension hearing (Assistant Principal Pettigrew) have <u>not</u> been investigated or required to be on a leave of absence and reassigned to a lesser position at home.

14

95. The Defendants' conduct over the past eight (8) months is deprivation of Coffman's due process rights and is negatively affecting his career and profession in the eyes of the public by impeding his personal development and undermining his authority.

96. Coffman has also experienced economic loss by having to pay Attorney Markling to defend the frivolous and spurious document allegations, which have damaged his name and reputation in the community.

97. In August 2016, Coffman hired a new attorney to try and resolve the within and improper administrative leave in violation of his due process, contract, statutory, and Board ByLaws & Policies rights.

98. Coffman's new attorney sent a letter on August 11, 2016, requesting mediation to settle the matter and set a response date of August 19, 2016, because of impending deadlines to file an EEOC complaint.

99. Belatedly, but on August 23, 2016, counsel for the Defendants responded that the Board was <u>not</u> going to participate in any mediation nor grant any extension of time to toll the statute of limitations time period for the EEOC complaint.

100. On August 24, 2016, the Defendants' attorney sent a letter to Attorney Markling requesting a pre-disciplinary conference the first week of September 2016.

101. The Defendants' self-serving correspondence disingenuously states that settlement discussions have reached an impasse; however, the August 11, 2016, letter from Coffman's new attorney was <u>requesting</u> mediation to continue settlement discussions. Thus, the only impasse to settlement was Defendants' refusal to participate.

102. Therefore, Coffman is left with no alternative but to commence the within matter to protect all his rights and pursue all his remedies against the improper, continuing wrongful actions of all the Defendants.

## COUNT I – BREACH OF CONTRACT

103.    Coffman incorporates all of the above paragraphs as if fully rewritten herein.

104.    Coffman brings this cause of action against the Board.

105.    A valid O.R.C. 3319.02 administrative contract exists to employ Coffman as the Parma HS Principal through the 2015-2016, 2016-2017, and 2017-2018 school years.

106.    Coffman performed under the O.R.C. 3319.02 administrative contract by fulfilling his Parma HS Principal duties and responsibilities as assigned by the Defendants.

107.    The Board breached its duty to Coffman by placing him on administrative leave on January 12, 2016, and removing him as the Principal of Parma HS.

108.    The Defendants prohibited Coffman to be on school property or have any form of communication or contact with any District student(s), parents or District staff member without express permission from Director Johnson.

109.    Furthermore, the Board restricted Coffman from using or having access to any District technology, other than to communicate with his direct supervisor or Director Johnson.

110.    The Board furthermore breached Coffman's contract by requiring that he be "reassigned to your home" during regularly scheduled work hours, which is an unauthorized transfer to a lesser position.

111.    The above breaches of Coffman's contract have existed from January 13, 2016, to the present and constitutes a breach of the administrative contract terms (Section 2) that prohibits Coffman from being "assigned or transferred to a position of lesser responsibility except with Administrator's [Coffman] consent to such assignment or as authorized by law."

112.    Coffman has not consented and on January 13, 2016, he specifically requested "to return to my position as building principal as soon as possible.  I am not a threat to anyone at

school.  My leave usurps my authority as principal.  I wish to return to fulfill my responsibilities.  Please inform me when I may return."

113.    The Board's reassignment of Coffman to a lesser position of being at home for eight months, prohibiting communication and contact, and requiring him to be available from his home, is a transfer to a lesser position not authorized pursuant to the valid contract terms agreed upon between the parties and Ohio law.

114.    The Board's breaches of the contract terms also violate the statutory protections and prohibitions established by the General Assembly in O.R.C. 3319.02(C).

115.    The Board's improper conduct also constitutes a constructive termination of Coffman's administrative contract by reassigning him to his home and forbidding any communication or contact with student(s), parents, and/or employees of the District.

116.    Defendants also violated the statutory protections of O.R.C. 3319.02(D)(5).

117.    The General Assembly enacted legislation that requires the Board to establish an evaluation procedure for administrators and principals.

118.    Furthermore, if the Board "fails to provide an evaluation pursuant to O.R.C. 3319.02(D) (2)(c)(i) or (ii)," then "the employee [Coffman] automatically shall be reemployed at the same salary plus any increments that may be authorized." See O.R.C. 3319.02(D)(5).

119.    Furthermore, since Coffman was a Principal at Parma HS and had been employed for over three years at the District, then his reemployment shall be for an additional two (2) years pursuant to O.R.C. 3319.02(D)(5).

120.    In this matter, the Defendants have failed to meet and/or provide an evaluation of Coffman as required under O.R.C. 3319.02(D), which results, by operation of law, of the extension of Coffman's employment contract for two more years, pursuant to O.R.C. 3319.02(D)(5) or through the 2019-2020 school year.

121.    Coffman has suffered damages and loss as a result of the breaches of the contract by the Board and the Defendants.

122.    Wherefore, Coffman requests compensatory, consequential, and punitive damages, reinstatement, attorney fees, costs, litigation expenses, and any other relief this Court deems just and proper.

## <u>COUNT II – DECLARATORY JUDGMENT</u>

123.    Coffman incorporates all of the above paragraphs as if fully rewritten herein.

124.    Coffman brings this cause of action pursuant to O.R.C. 3319.02 and Revised Code Chapter 2721.  Declaratory relief is also authorized by 28 U.S.C. §§ 2201, 2202, and Federal Rules of Civil Procedures 57.

125.    Coffman brings this action against the Board.

126.    A real and actual controversy exists between the parties regarding the status of Coffman's O.R.C. 3319.02 administrative contract with the Board.

127.    The controversy regarding the status of Coffman's O.R.C. 3319.02 contract is both justiciable in character and redressable.

128.    The controversy between Coffman and the Board will not be terminated and will continue to exist unless the Court issues a declaratory judgment on the parties' rights and obligations under the contract.

129.    Speedy relief is necessary in order to preserve Coffman's rights and to have him reemployed in a timely manner and reassume his position as a high school principal at Parma HS as required under the express administrative contract provisions.

130.    The 2016-2017 academic school year for Parma HS has already commenced, with a new interim principal, and Coffman remains reassigned to his home by Director Johnson.

131.    Wherefore, Coffman requests that this Honorable Court issue an order declaring the following:  (**A**) a valid O.R.C. 3319.02 administrative contract exists to employ Coffman as the Parma HS Principal through the 2015-2016, 2016-2017, and 2017-2018 academic school years; (**B**) Coffman performed his duties under O.R.C. 3319.02 administrative contract by being the Parma HS Principal as assigned by the Defendants; (**C**) the Board is prohibited from continuing the suspension and reassignment to home that has been ongoing and continuing since January 13, 2016; (**D**) the Board breached its duty to Coffman as it has improperly reassigned him to a lesser position by being required to be at home without ability to contact students, parents, and employees of the District; (**E**) the Board is prohibited from suspending the O.R.C. 3319.02 administrative contract for Coffman as the Parma HS Principal through the 2017-2018 school year; (**F**) by operation of law, Coffman's administrative employment contract has been extended two additional years (i.e. 2018-2019 and 2019-2020) pursuant to O.R.C. 3319.02(D)(5); and (**G**) Coffman shall be awarded compensatory damages, attorney fees, punitive damages, costs, litigation expenses, and any other relief this Court deems just and proper.

### COUNT III – DUE PROCESS VIOLATIONS

132.    Coffman incorporates all of the above paragraphs as if fully rewritten herein.

133.    Coffman brings this claim pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourteenth Amendment to the United States Constitution.

134.    Coffman brings this claim against all the Defendants, jointly and severally.

135.    Defendants are persons for purposes of 42 U.S.C. § 1983 liability.

136.    Defendants are not entitled to qualified immunity as the Complaint states a constitutional right, which was clearly established at the time of the Defendants' misconduct.

137.    Defendants are the final policy-makers for purposes of 42 U.S.C. § 1983 liability.

138.   Coffman has a life, liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Due Process Clause").

139.   Coffman's legitimate claims of entitlement to a property and benefits are manifested through O.R.C. 3319.02, as well as employment contracts, bylaws, policies, guidelines, rules, and regulations applicable to this matter.

140.   Defendants acted under color of law to deprive Coffman of his protected property interests under the Due Process Clause.

141.   Coffman was not afforded adequate procedural rights prior to the deprivation of his protected interests, as Defendants deprived Coffman of his O.R.C. 3319.02 administrative contract by suspending him from his position as Principal of Parma HS, requiring him to be reassigned to a lesser position of home, and prohibiting him from any contact with any student(s), parents or employees of the District.

142.   The deprivation of Coffman's protected interests contravenes federal notions of due process and fair dealing.

143.   Defendants approved, ratified or otherwise caused the deprivation of Coffman's protected property interests without just cause to do so.

144.   The deprivation of Coffman's protected property interest resulted from a policy, custom, and practice of the Board and the Defendants.

145.   Wherefore, Coffman requests compensatory damages, appropriate equitable relief, reinstatement, punitive damages, attorney fees, costs, litigation expenses, and any other relief this Court deems just and proper.

## COUNT IV – SECTION 1985(3) CONSPIRACY

146.   Coffman incorporates all of the above paragraphs as if fully rewritten herein.

147.   Coffman brings his claim pursuant to 42 U.S.C. § 1985(3).

148.    Coffman brings this claim against all Defendants, jointly and severally.

149.    Defendants were/are members of the conspiracy.

150.    The purpose of the conspiracy was to deprive Coffman of his protected property interests under the due Process Clause.

151.    The purpose of the conspiracy was to deprive Coffman of the equal protection of the laws, or equal privileges or immunities of the laws.

152.    The actions of the Defendants were motivated by a class-based, invidiously discriminatory animus.

153.    Defendants engaged in acts in furtherance of the conspiracy by:  (**A**) conspiring to have Coffman appear for an interrogation without proper notice or ability to bring a legal representative; (**B**) depriving Coffman of his O.R.C. 3319.02 administrative contract as the Parma HS Principal without affording Coffman any reasonable due process; and (**C**) delaying and not evaluating nor investigating the *alleged* lack of proper documentation for a fight, which has lasted over eight months without affording any reasonable due process to Coffman.

154.    Coffman has been injured in his property rights under O.R.C. 3319.02 as well as his employment contract, bylaws, policies, guidelines, rules, and regulations that are applicable to this matter.

155.    Wherefore, Coffman requests compensatory damages, punitive damages, attorney fees, costs, litigation expenses, and any other legal or equitable relief this Court deems just and proper.

## COUNT V – FALSE-LIGHT

156.    Coffman incorporates all of the above paragraphs as if fully rewritten herein.

157. O.R.C. 2744.09(B) exempts this claim from R.C. Chapter 2744 immunity as the claim involves a civil action by an employee against the political subdivision and its employees relative to a matter that arose out of the employment relationship between Coffman and the Board.

158. Coffman brings this claim against all Defendants, jointly and severally.

159. Defendants made statements regarding the employment dispute and allegations raised by and against Coffman, which placed Coffman in a false-light and/or were otherwise untrue.

160. Defendants publicized the employment dispute by communicating it to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

161. Defendants publicized the employment dispute and allegations raised by and against Coffman to all parents of students in Parma HS by a voice mail robocall by the interim principal explaining that Coffman was on leave, but did not identify what type of leave.

162. Defendants furthermore publicized the employment dispute and allegations by having Coffman's name removed from all District websites and written literature after his suspension commenced on January 13, 2016.  After Attorney Markling advised the Defendants that Coffman's name was wrongfully removed, the Defendants put back Coffman's name on the website and written documents.

163. On August 1, 2016, Coffman's name has been replaced by the Defendants with the interim principal Leo Spagnola's name on the District web site and documents.

164. Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false-light in which Coffman would be placed.

165.   Wherefore, Coffman requests compensatory damages, attorney fees, punitive damages, costs, litigation expenses, and any other relief this Court deems just and proper.

## COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

166.   Coffman incorporates all of the above paragraphs as if fully rewritten herein.

167.   R.C. 2744.09(B) exempts this claim from R.C. Chapter 2744 immunity as the claim involves a civil action by an employee against the political subdivision and its employees relative to a matter that arose out of the employment relationship between Coffman and the Board.

168.   Coffman brings this claim against all Defendants, jointly and severally.

169.   Defendants either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to Coffman.

170.   Defendants' conduct was so extreme and outrageous as to go beyond all bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

171.   Defendants wrongfully suspended and required Coffman to be reassigned to a lesser position at home, prohibited him from contacting any student(s), parents or District employees so that he could clear his good name, and he has not been able to access his email or perform any other work functions during this eight-month time period, which is continuing.

172.   Defendants' actions were the proximate cause of Coffman's psychic injury.

173.   The mental anguish suffered by Coffman is serious and of a nature that no reasonable person could be expected to endure.

174.   Wherefore, Coffman requests compensatory damages, attorney fees, punitive damages, costs, litigation expenses, and any other relief this Court deems just and proper.

## COUNT VII – INTERFERENCE WITH CONTRACT

175. Coffman incorporates all of the above paragraphs as if fully rewritten herein.

176. O.R.C. 2744.09(B) exempts this claim from R.C. Chapter 2744 immunity as the claim involves a civil action by an employee against the political subdivision and its employees relative to a matter that arose out of the employment relationship between Coffman and the Board.

177. Coffman brings his claim against the individual Defendants, Superintendent Hilling, Director Johnson, President Petro, Vice President Halloran, Board Member Dendorfer, Board Member Gulick, and Board Member Tenerowicz (collectively, these individual Defendants will be referred to as "Individual Defendants"), jointly and severally.

178. There exists and employment contract between Coffman and the Board by virtue of the O.R.C. 3319.02 administrative contract.

179. The Individual Defendants had knowledge of the business relationship and employment contract between Coffman and the Board.

180. The Individual Defendants intentionally interfered with the contractual relationship by conspiring to suspend and reassign Coffman to a lesser position at home during an alleged investigation; depriving Coffman of his right to perform under his O.R.C. 3319.02 administrative contract as the Parma HS Principal; and prohibiting Coffman from defending himself and clearing his name by not allowing him to communicate with student(s), parents or employees at the District, unless he would face termination by Director Johnson.

181. The interference caused a breach of the O.R.C. 3319.02 contract terms between Coffman and the Board by his being reassigned to a lesser position at home and not being able to perform his duties as the Parma HS Principal.

182. Coffman suffered damages, and continues to be damaged, as a result of the interference of the contract by the Individual Defendants.

183. Wherefore, Coffman requests compensatory damages, attorney fees, punitive damages, costs, litigation expenses, and any other relief this Court deems just and proper.

## COUNT VIII – EQUAL PROTECTION SECTION VIOLATIONS

184. Coffman incorporates all of the above paragraphs as if fully rewritten herein.

185. Coffman brings this claim pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Equal Protection clause of the Fourteenth Amendment of the United States Constitution ("Equal Protection Clause").

186. Coffman brings this claim against all Defendants, jointly and severally.

187. Defendants are persons for purposes of 42 U.S.C. § 1983 liability.

188. Defendants are not entitled to qualified immunity as the Complaint states a constitutional right, which was clearly established at the time of the Defendants' misconduct.

189. Defendants are final policy-makers for purposes of 42 U.S.C. § 1983 liability.

190. Defendants acted under color of law to deprive Coffman of his right to be free from age discrimination and violation of the Equal Protection Clause.

191. Coffman is a member of a statutorily-protected class as he was at least 40 years old at the time of the alleged discrimination.

192. Defendants subjected Coffman to adverse employment actions with discriminatory intent and purpose.

193. Coffman is qualified for all applicable positions referenced herein, with or without reasonable accommodations.

194. Defendants treated Coffman differently than other non-protected employees for engaging in the same or similar conduct.

195.  Defendants approved, ratified, or otherwise caused the deprivation of Coffman's right to be free from age discrimination.

196.  The deprivation of Coffman's right to be free from age discrimination resulted from a policy, custom, and practice of the Board.

197.  Wherefore, Coffman requests compensatory damages, appropriate equitable relief, reinstatement, punitive damages, attorney fees, costs, litigation expenses, and any other legal or equitable relief this Court deems just and proper.

## COUNT IX – FEDERAL AGE DISCRMINATION

198.  Coffman incorporates all of the above paragraphs as if fully rewritten herein.

199.  Coffman brings this claim pursuant to the Age Discrimination and Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.*

200.  Coffman brings this claim against the Board.

201.  Coffman is a member of the statutorily-protected class as he was at least 40 years old at the time of the alleged discrimination.

202.  Defendants subjected Coffman to adverse employment actions.

203.  Coffman is always qualified for all applicable positions referenced herein.

204.  The Board replaced Coffman with a person outside the protected class and/or a person substantially younger than Coffman.

205.  Wherefore, Coffman requests compensatory damages, including back pay, front pay, liquidated damages, reinstatement, attorney fees, punitive damages, costs, litigation expenses, and any other equitable relief this Honorable Court deems just and proper.

## COUNT X – STATE AGE DISCRIMINATION

206.  Coffman incorporates all of the above paragraphs as if fully rewritten herein.

207.  Coffman brings this claim pursuant to O.R.C. 4112.14 and/or 4112.99.

26

208. Coffman brings this claim against all Defendants, jointly and severally.

209. Coffman is a member of the statutorily-protected class as he was at least 40 years old at the time of the alleged discrimination.

210. Defendants subjected Coffman to adverse employment actions.

211. Coffman is otherwise qualified for all applicable positions referenced herein.

212. Defendants replaced Coffman with a person outside the protected class and/or a person substantially younger than Coffman.

213. Wherefore, Coffman requests compensation for lost wages and any lost fringe benefits, back pay, punitive damages, reasonable attorney fees, costs, litigation expenses, and any other legal or equitable relief as this Court deems just and proper.

## COUNT XI – FEDERAL RETALIATION

214. Coffman incorporates all of the above paragraphs as if fully rewritten herein.

215. Coffman brings this claim pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq*.

216. Coffman brings this claim against the Board.

217. Coffman engaged in activity protected by Title VII of the Civil Rights Act of 1964. For example, Coffman filed formal harassment complaints and filed discrimination charges with the EEOC.

218. The Board knew about Coffman's exercise of civil rights, as the Board has been "investigating" Coffman from January 12, 2016, to the present.

219. The Board maintained and took its adverse employment action against Coffman by continuing to keep him on a lesser reassignment to home, forbidding communication with students and teachers, and attempting to schedule him for a disciplinary meeting because of his filing of the EEOC Complaint.

220.   There is a causal connection between the protective activity and the adverse employment actions that are being continued by the Board.

221.   Coffman incorporates by reference his right-to-sue letter regarding the initial events and subsequent discrimination and adverse consequences that have occurred by the Board.

222.   Wherefore, Coffman requests compensatory damages, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses, back pay, front pay, attorney fees, punitive damages, reinstatement, costs, litigation expenses, and any other legal or equitable relief this Court deems just and proper.

## COUNT XII – PUBLIC RECORDS REQUEST

223.   Coffman incorporates all of the above paragraphs as if fully rewritten herein.

224.   Coffman requested public documents through an Ohio Public Records Request and a Freedom of Information Act Request.

225.   Defendants, jointly and severally, have refused to produce documents in a timely fashion and/or have been delinquent and delayed the production of documents as required under state and federal law.

226.   Coffman is entitled to an order requiring the Defendants to produce the reasonable and requested information to Attorney Markling.

227.   Wherefore, Coffman requests compensatory, consequential, punitive damages, attorney fees, costs, litigation expenses, and any other relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chad Coffman prays that this Honorable Court award the above requested relief and such other relief as this Honorable Court deems just and proper in order to make the Plaintiff whole.

28

Respectfully submitted,

*/s/ Christopher M. DeVito*

Christopher M. DeVito (0047118)
**Morganstern, MacAdams & DeVito Co., L.P.A.**
623 West Saint Clair Avenue
Cleveland, Ohio 44113-1204
216-687-1212 / 216-621-2951 Fax
ChrisMDeVito@gmail.com

*Attorney for Plaintiff*

## JURY DEMAND

A trial by jury with the maximum number of jurors permitted under Ohio law is hereby requested on all applicable causes of action.

Respectfully submitted,

*/s/ Christopher M. DeVito*

Christopher M. DeVito

L:\CLIENTS-CMD\Coffman,Chad\2016.08.29.Coffman Complaint.docx